UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES MCGAULEY,

    Plaintiff,

vs.                                                    Case No.  3:07-cv-543-J-MCR

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

        Defendant.

_____/

**MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of a final administrative decision denying his application for Social Security benefits.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, it is recommended the Commissioner's decision be **REVERSED** and **REMANDED** for proceedings not inconsistent with this opinion.

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability and Disability Insurance Benefits ("DIB") on October 3, 2003, alleging an inability to work since March 9, 2001. (Tr. 56-58).  The Social Security Administration ("SSA") denied this application initially (Tr. 25) and on reconsideration (Tr. 26-29).  Plaintiff then requested (Tr. 40-41) and received a hearing before an Administrative Law Judge (the "ALJ") on February 13,

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Docs. 18 & 19).

1

2006 (Tr. 280-313). On May 23, 2006, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 18-24). Plaintiff filed a Request for Review by the Appeals Council, but the Appeals Council denied Plaintiff's Request for Review (Tr. 6-8), thus making the ALJ's May 23, 2006 decision the final decision of the Commissioner. Plaintiff timely filed his Complaint in the U.S. District Court on June 18, 2007. (Doc. 1).

II.     NATURE OF DISABILITY CLAIM

   A.     Basis of Claimed Disability

Plaintiff claims to be disabled since March 9, 2001 due to disc degeneration in his lower back and pain in his lower back and legs. (Tr. 71, 83, 102, & 111).

   B.     Summary of Medical Evidence Before the ALJ

Plaintiff, who was 45 years of age on the date of the hearing(Tr. 23, 286), has a high school education with work experience as a shift supervisor in a textile manufacturing plant and as a mechanic (Tr. 286-90). Plaintiff began having pain in his lower back which radiated into his right lower extremity in 1999. (Tr. 130-131). Plaintiff does not recall any accident or unusual activities which triggered this pain. (Tr. 130). The following is a summary of Plaintiff's medical history, limited to the issues Plaintiff raises in this appeal.

In early 1999, Jesus Hiromoto, M.D., a neurosurgeon, diagnosed Plaintiff with spondylosis L3-4 and low back pain with irradiation to his right lower extremity. (Tr. 131). In July 1999, Dr. Hiromoto opined Plaintiff suffered from mild spinal stenosis with bulging disc L3-4 and low back pain with irradiation to his right lower extremity. (Tr. 186). Dr. Hiromoto continued to see Plaintiff through late 2000, noting his pain was not getting better. (Tr. 182). In September 2000, Dr. Hiromoto noted Plaintiff should be

able to keep his job as a supervisor and opined that he needs to learn to deal and live with the pain. (Tr. 176). Plaintiff was instructed to return to work on September 18, 2000. (Tr. 176).

In October 2000, Plaintiff presented to the South Georgia Medical Center and underwent an evaluation by Edward K. Mark, M.D. (Tr. 142). Dr. Mark noted Plaintiff had experienced back pain for two years; at first on an episodic basis, but over the course of several months, Plaintiff's back pain had become constant and unrelenting and it radiated into his right leg. (Tr. 142). Dr. Mark noted Plaintiff had a very limited range of motion in his lumbosacral spine and straight leg raise. (Tr. 142). Dr. Mark administered steroid injections into Plaintiff's lumbar region from November 2000 through March 2001, as Plaintiff continued to complain of back and leg pain. (Tr. 133-137). The injections helped for approximately two months until Plaintiff engaged in some rather strenuous work requiring lifting, pulling, and pushing. (Tr. 141). A lumbar myelogram in December 2000 demonstrated rather diffuse bulging disc at L3-4 level resulting in spinal canal and neural foraminal stenosis. (Tr. 141, 149).

An EMG in early January 2001 did not identify a specific level of lumbar radiculopathy but Dr. Mark opined the results may be consistent with lumbosacral radiculopathy. (Tr. 141). Dr. Mark also noted that the results from Plaintiff's myelogram demonstrated some spondylosis and stenosis at the L3-4 level; however, he further noted that the myelogram findings do not correlate well with Plaintiff's distribution of symptoms. (Tr. 141).

On February 3, 2001, Plaintiff was in a car accident which exacerbated his discomfort in his back and caused some neck and right arm pain. (Tr. 140). An MRI of

Plaintiff showed disc dehydration at L3-4 and L5-S1.  (Tr. 172).  Dr. Hiromoto diagnosed Plaintiff with lumbar spine sprain, cervical spine sprain, low back pain with irradiation to his right lower extremity, and cervical pain with irradiation to his right upper extremity. (Tr. 172).  On May 3, 2001, Dr. Hiromoto noted Plaintiff was not able to work and indicated he should return to the office in June 2001; however, Plaintiff continued to experience a lot of pain in June and Dr. Hiromoto opined Plaintiff should return to the office in July 2001.  (Tr. 170-171).  Plaintiff returned to see Dr. Hiromoto in July 2001, still complaining of significant pain and Dr. Hiromoto recommended Plaintiff begin light work on August 1, 2001.  (Tr. 169).  Dr. Hiromoto noted Plaintiff could not do heavy lifting, was limited to lifting 25 pounds, should avoid bending and twisting, and he needs to change positions often.  (Tr. 169).  On August 17, 2001, Dr. Hiromoto noted Plaintiff is able to work only an 8 hour shift and is only capable of standing or sitting 30 to 40 minutes at a time.  (Tr. 168).  Dr. Hiromoto kept Plaintiff at light work status through July 2002.  (Tr. 163).

In November 2002, Plaintiff returned to see Dr. Mark and continued to complain of back pain, stating his symptoms recurred a few months ago and he was unable to work.  (Tr. 139).  Dr. Mark noted Dr. Hiromoto had advised Plaintiff that there was nothing surgically which could be done for him; however, Dr. Mark believed Plaintiff was experiencing exacerbation of lumbar radiculopathy.  (Tr. 139).

On November 8, 2003, Tom Peelmo, M.D., a state agency consultant, completed a physical RFC assessment on Plaintiff.  (Tr. 190).  He diagnosed Plaintiff with back pain and found him capable of lifting 20 pounds occasionally and 10 pounds frequently, standing or walking about 6 hours in an 8-hour workday, sitting about 6 hours in an 8-

hour workday and capable of unlimited pushing and/or pulling.  (Tr. 190-191).   Dr. Peelmo noted Plaintiff had occasional postural limitations in all postures, except that he had frequent limitations in climbing ladders, ropes, and scaffolds.  (Tr. 192).  Dr. Peelmo determined Plaintiff should avoid concentrated exposure to hazards.  (Tr. 195). Finally, he determined Plaintiff's symptoms are attributable to a medically determinable impairment and that Plaintiff appears credible.  (Tr. 195).

On March 18, 2004, Ivan A. Lopez, M.D., a neurologist, examined Plaintiff at the request of the Social Security Administration.  (Tr. 198-199).  Dr. Lopez noted Plaintiff complained of significant back/neck pain.  (Tr. 198).  On examination, Plaintiff's movements were slow and antalgic, with pain upon motion and pressure to the shoulders, hips, and paravertebral muscles at the cervical and lumbar spine.  (Tr. 198). He walked slow with a cane and even slower without one, and he appeared depressed. (Tr. 198).  Dr. Lopez diagnosed Plaintiff with lumbar radiculopathy, L4-S1, bilateral and cervical sprain.  (Tr. 198).  He noted Plaintiff's history is compatible with his physical findings and Plaintiff appeared in very much pain during his examination.  (Tr. 198).

Dr. Lopez opined Plaintiff "has work-related limitations of not engaging in strenuous physical activity, not climbing, no kneeling, squatting, crawling, repetitive bending or moving (except for walking), not operating heavy equipment or a commercial truck, or carry more than 10 pounds with the left arm, none with the right one, which he needs to control his cane."  (Tr. 198).  Dr. Lopez further opined Plaintiff "is unemployable, due to his slow-painful movements, his need of ambulatory aid and the use of pain reliever with strong narcotic."  (Tr. 198).

Plaintiff was seen at The Nightingale Clinic from March 2003 through October

2005. (Tr. 201-212, 252-273). He consistently complained of chronic back pain. (Tr. 201-212). He was prescribed Vioxx and OxyContin, which mildly controlled his pain. (Tr. 201). Plaintiff, however, began developing side-effects from his medications and his doctors at the Nightingale Clinic adjusted his medications and eventually noted his pain was under control. (Tr. 252, 256-59, 263).

On June 11, 2004, Raul B. Zelaya, an orthopedic surgeon, examined Plaintiff. He noted Plaintiff's chief complaint was low back pain and that Plaintiff reported being unable to stand or sit for prolonged periods of time because of such pain. (Tr. 215). On examination, Dr. Zelaya noted Plaintiff did not walk with a gait, sat in a sports car for over an hour to make it to the appointment, and had no trouble taking off his shoes and socks without any assistance. (Tr. 216). Dr. Zelaya diagnosed Plaintiff with low back pain; however, he also noted he was unable to correlate Plaintiff's subjective complaints with his objective physical findings. (Tr. 217).

On June 24, 2004, Edward W. Holifield, M.D., a state agency physician, completed a physical RFC assessment on Plaintiff. (Tr. 227-233). He diagnosed Plaintiff with back and neck pain and opined Plaintiff could occasionally lift 20 pounds and frequently less than 10 pounds. (Tr. 228). He further opined Plaintiff could stand and/or walk less than 2 hours in an 8-hour work day and that Plaintiff needed a cane to use in assistance with ambulation. (Tr. 228). He determined Plaintiff could sit about six hours in an 8-hour workday and was limited in pushing and/or pulling with his lower extremities. (Tr. 228). Dr. Holifield found Plaintiff occasionally limited in all postural positions. (Tr. 229). Finally, Dr. Holifield opined that Plaintiff's symptoms and limitations are disproportionate to the medical evidence of record. (Tr. 232).

Records from the Trinity Family Clinic from April 11, 2005 through April 29, 2005 demonstrate Plaintiff continued to complain of back, neck, and left arm pain. (Tr. 237-238). Plaintiff underwent several radiological exams on April 21, 2005. A MRI of Plaintiff's lumbar spine (with 2 views) was essentially normal and showed no evidence of arthritic process and normal intervertebral spaces. (Tr. 238). However, a second MRI of the lumbar spine (without contrast) demonstrated degenerative changes with a focus at L3-L4 where there is a posterior bulge secondary to osteophyte formation without an associated disk herniation. (Tr. 239). A MRI of Plaintiff's cervical spine (with 4 views was normal (Tr. 241); although a MRI of Plaintiff's cervical spine (without contrast) showed degenerative change and disk herniation demonstrated with a foci at C6-C7. (Tr. 240).

On June 6, 2005, Plaintiff was examined by Mark J. Cuffe, M.D., a neurosurgeon. (Tr. 248-250). Dr. Cuffe determined Plaintiff's lower back and neck pain are almost certainly myofascial; although, he also noted his lumbar pain was possibly secondary to lumbar facet syndrome. Dr. Cuffe opined Plaintiff would not benefit from any type of neurosurgical intervention; however, Dr. Cuffe did offer to set Plaintiff up to see a pain management specialist. (Tr. 252).

### C. Plaintiff's Testimony at the Hearing

At the hearing, Plaintiff testified he has not looked for work since leaving his shift supervisor position in 2001 because he did not think anyone would hire him since he would likely have to miss work frequently. (Tr. 291). Plaintiff indicated the constant pain in his lower back and legs prevents him from working. (Tr. 291). Plaintiff noted that he did not have a major injury or accident, but rather, the pain in his back and legs

came on gradually. (Tr. 292). He testified that the ache in his low back is constant and runs into his hips. (Tr. 292). Plaintiff further testified that on a good day, he can sit or stand about an hour without it bothering him; however, if he over does it, he will experience even greater pain the following day. (Tr. 293). Plaintiff stated that bending over and standing completely erect aggravate the pain in his back. (Tr. 294).

Plaintiff also stated his pain medications help some, but do not entirely get rid of the pain. (Tr. 294). Further, Plaintiff testified his pain medications cause him to get drowsy and make his memory foggy. (Tr. 294). Plaintiff complained that in addition to his back and leg pain, he has neck pain and is unable to lift his right arm. (Tr. 295). He testified that he lies down to relieve his pain and that his pain and medications affect his concentration. (Tr. 296-97). Finally, in response to a question from the ALJ asking Plaintiff about a medical note which suggested Plaintiff had been doing well for the past few months and that it seemed his doctors had finally found the right combination of medication for Plaintiff, Plaintiff responded that the note merely meant his medications are no longer making him sick, but that they do not provide any more pain relief than they had in the past. (Tr. 301).

### D. <u>Summary of the ALJ's Decision</u>

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. <u>See</u> 20 C.F.R. §§ 404.1520. First, if a claimant is working at a substantial gainful activity, he is

not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 20). At step two, the ALJ found Plaintiff's degenerative disc disease of the lumbar and cervical spine is a severe impairment. (Tr. 20). At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CRF Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525 and 404.1526). (Tr. 21). Next, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work. (Tr. 22). Specifically, the ALJ determined Plaintiff can "lift 20 pounds occasionally and 10 pounds frequently and sit or stand for 30-40 minutes maximum at one time." (tr. 22). The ALJ further found Plaintiff "cannot climb and can occasionally balance, stoop, kneel, crouch, and crawl" and "can

9

occasionally reach overhead using his dominant upper extremity, and he must avoid working at heights or around dangerous or moving machinery." (Tr. 22). Concurrent with the ALJ's RFC analysis, the ALJ also opined Plaintiff's statements concerning the intensity, duration and limiting effects of his symptoms are not entirely credible. (Tr. 22).

At step four, the ALJ utilized a Vocational Expert ("VE") who determined Plaintiff's past work was performed at the heavy and medium exertional levels. (Tr. 22-23). The VE opined, and the ALJ found, that Plaintiff could not perform his past relevant work. (Tr. 22-23). At step five, the ALJ posed a few hypothetical questions to the VE and after relying on the VE's testimony, the ALJ found Plaintiff capable of performing the jobs of labeler, shipping and receiving weigher, and apparel stock checker -- all of which existed in significant numbers in the national economy. (Tr. 23-24). Accordingly, the ALJ determined Plaintiff is not disabled within the meaning of the Social Security Act. (Tr. 24).

## III.    ANALYSIS

### A.    The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v.

Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B. Issues on Appeal

Plaintiff argues three issues on appeal. First, Plaintiff contends the ALJ erred by failing to provide a proper basis for rejecting Plaintiff's credibility. (Doc. 15, p. 4). Next, Plaintiff argues the ALJ erred in determining Plaintiff's RFC because he excluded Plaintiff's limited stamina, the debilitating effects of his pain, as well as Plaintiff's mental side-effects from his medication. (Doc. 15, p. 5). Finally, Plaintiff asserts the ALJ erred in rejecting the opinion of Dr. Lopez, one of Plaintiff's examining physicians, because the ALJ did not clearly state the basis for rejecting such opinion. (Doc. 15, p. 6). Because the Court finds remand is necessary based on the ALJ's credibility analysis, the Court will begin its discussion with this issue.

### 1. **Whether the ALJ Erred When Discrediting Plaintiff's Pain Testimony**

Plaintiff argues the ALJ erred in discrediting his pain testimony because he failed to provide specific reasoning for rejecting Plaintiff's credibility. (Doc. 15, p. 5-23). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § § 404.1528, 416.929. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). Here, the ALJ properly applied the Foote pain standard, as he found Plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms. . . ." (Tr. 22). However, the ALJ further noted the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible and not consistent with an inability to do all work activity." (Tr. 22). When the ALJ makes the decision to discredit Plaintiff's testimony because it is not substantiated by the medical evidence, the ALJ is required to provide "explicit and adequate reasons" justifying his decision. Cannon v. Bowen, 858 F. 2ed 1541, 1545 (11th Cir. 1988) (internal citations omitted). Moreover, the ALJ must consider all evidence about the

intensity, persistence, and functionally limiting effects of pain or other symptoms, in addition to the medical signs and laboratory findings when deciding the issue of disability. Foote, 67 F.3d at 1561.

In the instant case, the ALJ was required to justify his conclusion to discredit Plaintiff's testimony regarding his pain by setting forth substantial evidence to support such decision. Plaintiff argues the ALJ erred because he failed to articulate specific reasons for rejecting Plaintiff's credibility. (Doc. 15, p. 5). The Commissioner, on the other hand, responds the ALJ reviewed the entire record, including Plaintiff's subjective complaints, in accordance with the appropriate regulatory criteria and Eleventh Circuit case law. (Doc. 17, pp. 4-5). The Commissioner argues the ALJ cited the proper regulation that applies to the evaluation of subjective complaints and reviewed the allegations of Plaintiff's subjective testimony. (Doc. 17, p. 6).

Notably, in his credibility analysis, the ALJ does cite the proper regulation to evaluate Plaintiffs subjective complaints and even mentions Plaintiff's testimony concerning his pain, but fails to set forth explicit and adequate reasoning for rejecting such testimony. The ALJ never considered the intensity, persistence, and functionally limiting effects of Plaintiff's allegations of pain. Foote, 67 F.3d at 1561. Rather, he attempted to discredit Plaintiff's complaints of pain by discrediting Dr. Lopez's opinion that Plaintiff is incapable of maintaining employment due to Plaintiff's pain. Discrediting Dr. Lopez's opinion is an insufficient way to discredit Plaintiff's own testimony.

The ALJ had a duty to evaluate all of the evidence and in this case he erred by focusing only on his interpretation of the objective evidence and ignoring Plaintiff's subjective complaints. The ALJ provided no basis for discrediting Plaintiff's own

13

testimony regarding his pain and the effects of his medication on his pain.  The record is replete with documentation of Plaintiff's pain and notes by physicians documenting such pain.  Moreover, Plaintiff testified that although his medications helped some, they did not eliminate his pain.  Instead of discussing the evidence which supported Plaintiff's allegations of pain and explaining his rationale for rejecting it, the ALJ simply ignored it and instead focused only on the evidence supporting his conclusion to reject Plaintiff's credibility.

The brief explanation the ALJ gives does not paint the whole picture.  For instance, in rejecting Plaintiff's credibility, the ALJ also relies on Dr. Hiromoto's opinion from 2001 that Plaintiff is capable of light work; however, the ALJ fails to discuss the medical evidence after 2001 which supports Plaintiff's complaints of pain.  The ALJ also seems to rely on the fact that no physician recommended surgery for Plaintiff's back issues, but rather recommended pain management.  The fact that pain management was recommended to assist Plaintiff in alleviating his pain actually supports his allegations of pain, as opposed to discrediting Plaintiff's pain complaints.  Thus, the ALJ's reasoning is flawed.

In sum, the ALJ failed to base his decision to discredit Plaintiff's testimony on substantial evidence.  "Subjective pain testimony that is supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the claimant complains is <u>itself</u> sufficient to sustain a finding of disability.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  Here, the ALJ readily admitted that the objective evidence demonstrates that Plaintiff had impairments that could have caused Plaintiff's pain.  He, however, failed to offer significant reasons why Plaintiff's testimony

14

should be discredited.  Therefore, on remand, the ALJ should consider the record as a whole, making sure to address the relevant evidence and whether it supports or contradicts Plaintiff's pain testimony, and to explicitly and adequately justify his conclusions if he determines Plaintiff's testimony is not credible.

> **2.   Whether the ALJ Erred In Excluding Plaintiff's Lack of Stamina, Subjective Complaints of Pain, and Effects of Medication From Plaintiff's RFC**

Plaintiff next argues the ALJ erred when he determined Plaintiff was capable of performing work other than his previous employment.  While this argument implicates Step 5 of the ALJ's analysis, it also implicates the ALJ's RFC determination because Plaintiff argues that in concluding Plaintiff was capable of a reduced range of light work, the ALJ erred by not considering Plaintiff's stamina, the debilitating effects of Plaintiff's pain, and the side-effects of Plaintiff's medication.  (Doc. 15, p. 5).  The Commissioner argues the ALJ properly determined Plaintiff's RFC because he did not find Plaintiff's subjective complaints to be fully credible and because the state agency doctor found them to be disproportionate to the medical evidence of record.  (Doc. 17, p. 10) .

"In determining the claimant's RFC, the ALJ 'must determine if the claimant is limited to a particular work level.'" Green v. Social. Sec. Admin., 223 Fed. Appx. 915, 923 (11th Cir. 2007) (citing Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  Here, the ALJ determined Plaintiff was capable of a limited range of light work and in making such determination, the ALJ stated he considered Plaintiff's credibility in addition to the other medical evidence of record.  For the reasons mentioned above, the ALJ erred in failing to properly discredit Plaintiff's subjective complaints and because the ALJ's error in assessing Plaintiff's credibility necessarily affects Plaintiff's RFC, the ALJ should

reconsider Plaintiff's RFC on remand.  In doing so, the ALJ should make sure to consider the effects of Plaintiff's stamina, pain, and medication on his ability to perform at a particular work level.

### 3. Whether the ALJ Erred in Evaluating the Opinion of Plaintiff's Consultative Physician, Dr. Lopez

Dr. Lopez, a physician who examined Plaintiff in March 2004, opined Plaintiff was unemployable due to his slow painful movements, need of ambulatory aid, and use of pain relievers.  (Tr. 198).  The ALJ, however, rejected this opinion because it "was not within Dr. Lopez's province" and because it was inconsistent with the other medical evidence of record including Dr. Hiromoto's opinion in 2001 that Plaintiff could do a range of light work.   (Tr. 22).  Plaintiff argues the ALJ erred in rejecting the opinion of Dr. Lopez because it is not clear what the ALJ meant when he stated this opinion was "not within Dr. Lopez's province."  (Doc. 15, p. 6).  The Commissioner responds that final responsibility for deciding whether an individual is disabled, or unemployable, is reserved to the Commissioner.  (Doc. 17, pp. 11-12).  Additionally, the Commissioner points out that Dr. Lopez's opinion is not consistent with the other evidence of record, including Dr. Hiromoto's records.  (Doc. 17, p. 12).

Dr. Lopez only examined Plaintiff on one occasion and thus, he is not considered a treating physician; rather, he is an examining physician.   "The opinion of a one-time examiner is not entitled to deference."  Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986).  Nevertheless, when the ALJ rejects the opinion of any physician because the evidence supports a contrary conclusion, the ALJ is "required to state with particularity the weight he gives to different medical reasons and why."  McCloud v. Barnhart, 166

16

Fed. Appx. 410, 419 (11th Cir. 2006). Here, Plaintiff is correct that the ALJ's statement is not quite clear. Although the Commissioner provides a cogent argument stating that the ultimate responsibility of determining whether Plaintiff meets the statutory definition of disability is up to the Commissioner, the Commissioner has inserted its own reading of the ALJ's unsupported statement. While this statement may not be cause to remand this case on its own, when considered with the issues previously addressed, the Court finds the ALJ should clarify this statement. Therefore, on remand, if the ALJ continues to reject Dr. Lopez's opinion and finds that such opinion is not within Dr. Lopez's province, then the ALJ should provide a more detailed explanation for such statement.

## IV.   CONCLUSION

For the foregoing reasons, the undersigned finds the ALJ's decision is not supported by substantial evidence and is not based upon the proper legal standards.

Accordingly, it is hereby

**ORDERED**:

The Commissioner's decision is hereby **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. 405(g). Upon remand, the ALJ shall (1) reconsider Plaintiff's testimony in light of all of the evidence, and explicitly articulate his reasons for accepting or rejecting Plaintiff's testimony; (2) reconsider Plaintiff's RFC in conjunction with the credibility analysis; and (3) explain what is meant by the sentence that an opinion – relating to whether or not Plaintiff can maintain employment – "is not within Dr. Lopez's province." Finally, the ALJ may conduct any further proceedings he finds necessary in light of any new findings.

The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file.  The judgment shall state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) must be filed within fourteen (14) days of the Commissioner's final decision to award benefits.  See Bergen v. Commissioner of Social Security, 454 F.3d 1273, 1278, n.2 (11th Cir. 2006); Fed. R. Civ. P. 54(d)(2)(B); M.D. Fla. Loc. R. 4.18(a).

**DONE AND ENTERED** at Jacksonville, Florida, this  4th   day of August, 2008.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record